CONWAY *v.* MILLER COUNTY HIGHWAY & BRIDGE DISTRICT.

Opinion delivered November 1, 1915.

IMPROVEMENT DISTRICTS—BRIDGE AND HIGHWAY DISTRICT—CHARACTER OF THE IMPROVEMENT.—Act 153, of the Acts of 1915, providing for the construction of certain highways and a bridge, *held* to provide for the construction of *both* a highway *and* a bridge, and that the one could not be constructed without the other; that the discretion given the commissioners of the district was only as to the character of the improvements, and not as to whether the one or the other might be constructed.

Appeal from Miller Chancery Court; *Jas. D. Shaver,* Chancellor; reversed.

*William H. Arnold,* for appellant.

1. In establishing the Highway and Bridge District, the Legislature has attempted to give jurisdiction and control to the commissioners of the district, over such parts of the public roads therein as they may select, not exceeding sixty miles in the aggregate length of such roads which they may take charge of and improve. This is in conflict with the jurisdiction conferred upon the county court by the Constitution, art. 7, § 28, Const.; 89 Ark. 513; 118 Ark. 294. The commissioners have resolved to build five such roads under authority of section

2 of the act creating the district.   See also § § 5, 6, 7 of the act.

These five roads and bridge do not constitute a single improvement within the meaning of the law.  *Supra.* The act is inoperative on account of the indefiniteness of location of the proposed improvement.  *Swepton* v. *Avery,* 118 Ark. 294.

2.   The court was right in overruling the demurrer to the fifth paragraph of the complaint and in enjoining the commissioners from issuing bonds or incurring any indebtedness beyond 15 per cent. in valuation.   § 8, Act. Interest on the bonds is a part of the cost of the improvement.   102 Ark. 306.

3.   Under the act, the commissioners are required to build the bridge as a part of the improvement, and it is not severable from the remainder of the improvement contemplated by the act.

*E. B. Kinsworthy* and *T. D. Crawford* as *amici curiae.*

The act is clearly void under the ruling in *Swepton* v. *Avery,* 118 Ark. 294.

If the act has authorized the commissioners to combine a number of separate improvements in a single district, it is void.  *Id.;* 89 Ark. 513.

It is void in that it invests in the commissioners the discretion of selecting the location of the bridge, intended to become a public highway and part of a system of public highways.   This is a "local matter," the exclusive jurisdiction of which is vested in the county court.

The act is inoperative since it calls for improvements in excess of 15 per cent. of the valuation of all real property in the district.

It is manifest from a consideration of the terms of the act that the bridge and highways were intended to be a single and indivisible improvement.   See sections 2, 5 and 6 of the act.

A reasonable construction of the clause "if in the opinion of said commission it may be deemed necessary under this act" is not that it confers upon the commis-

sioners any discretion as to *building* the bridge, but rather as to the *character* of the bridge to be built.

Section 8 of the act plainly and without ambiguity limits the cost of the improvement authorized by the act to 15 per cent. of the valuation of the real property in the district. To construe the proviso of this section to mean, as contended for by appellee, that the only limitation on the amount of the improvements is that the district must not issue bonds in excess of 15 per cent. of the valuation would be contrary to legitimate statutory construction, and amount to rewriting the statute. The interest on the bonds must be considered as a part of the cost.

*M. E. Sanderson,* for appellee.

1. It is settled by the decisions of this court that the improvements authorized by this act are not in conflict with article 7, section 28, of the Constitution. This is not an attempt to organize a whole county into a road improvement district, as in the *Swepton* case, 118 Ark. 294, nor does it authorize the organization of a road improvement district with power placed in the hands of directors or commissioners to establish new public roads and impose their maintenance upon the county court. On the contrary, section 5 of the act expressly provides that, "The commission shall only improve such public highways as may have been laid out, or may hereafter be laid out, by the county court of Miller County." Acts 1915, p. 622; 92 Ark. 93; 96 Ark. 416; 104 Ark. 425. See also section 36 of the act.

2. There is no merit in the contention that the contemplated improvement of five roads as shown by the resolution of the commissioners does not constitute a single improvement, that the act is deficient in failing to provide that it shall be made in such manner as to be a connected single improvement, and inoperative on account of indefiniteness of location of the proposed improvement. See sections 2, 5 and 6 of the act, from which it is seen that the purpose of the Legislature in creating the district was to provide for the construction of a connected system of highways leading from the city

of Texarkana to the Red river on the north and east of the city. It was not intended to limit the commission to building the main road from the city of Texarkana to a fixed point on the Red river. The closing words of section 2 expressly grants power to the commission to build other highways than the main road, but only *in connection with the highway leading to said bridge.* There is no ''roving commission'' here, as was the case in *Cox* v. *Improvement District,* 118 Ark. 119. There is no indefiniteness as to the location of the improvement. The Legislature only undertook to describe it in a general way, leaving the plan or system of highways and bridge to be developed by the commission so as to serve the best interests of the people as a whole in said territory. The roads to be improved are accurately described upon the plat adopted by the commissioners.

3. It was not the purpose of the act to limit the cost of the improvement to 15 per cent. of the valuation of real property in the district, including interest on the bonds. The real meaning of the language used in section 8 is that the money to be actually expended for the work and the expenses incident to it, was to be borrowed at a rate of interest not exceeding 6 per cent. per annum, and to that end negotiable bonds were to be issued not exceeding 15 per cent. of the valuation of the real property in the district. See also sections 2, 5 and 6.

4. The proposed improvement as to the highway and bridge portion of the act is not inseparable. Section 5 vests in the commissioners the discretion to build the highways and bridge where, in their opinion, it is most practicable to ''locate and end'' them, and the discretion as to whether or not the bridge over Red river should be built at all.

That it was intended that the necessity for the building of the bridge should be left to the judgment of the commissioners, is made plain in section 2 and other language of the act showing that the grant of power was permissive in its nature, and not compulsory as to the building of the bridge.

Smith, J. Appellant brought suit to restrain the Miller County Highway and Bridge District from proceeding with the construction of certain highways pursuant to plans adopted by said highway and bridge district under the purported authority of Act No. 153 of the Acts of the General Assembly of 1915. It was alleged in the complaint that the said district was formed for the purpose of building a bridge across Red River at a point to be selected by the commissioners between the towns of Fulton and Index, and to build a highway leading to said bridge, and other highways in connection therewith. That by the terms of said act it is provided that "the improvements herein undertaken shall not exceed 15 per cent of the value of the real property of said district, subject to improvement district assessments as ascertained by the State and county assessments." That the real property of said district amounts to only $4,000,-000, so that the district is authorized to undertake no improvement that will cost exceeding $600,000, and the bridge across Red River would cost almost that sum, and after building it the district would have no funds with which to build the highways which by the terms of said act it is required to build. That said improvement was intended to be a unit, and there being no funds with which it can be constructed as such, the said district has no right to proceed with the construction of any part of said improvement. That nevertheless, the commissioners have formed plans for the building of a system of highways and have abandoned the idea of constructing such a bridge.

There were allegations in the complaint questioning the authority of the commissioners to construct the highways because the diversity of the public interests of said district was such that the roads could not be a single improvement.

The fifth paragraph of the complaint alleged that by the terms of said act the interest upon the bonds authorized to be issued is made a part of the cost of the improvement, but the commissioners have resolved to dis-

regard that limitation and to issue bonds for the full amount of 15 per cent. of the assessed value of the real property in the district, and will so issue bonds unless restrained by the order of the court.

The court below sustained the demurrer to all of the complaint except the fifth paragraph, as to which the demurrer was overruled, and this appeal has been prosecuted from that decree.

As we view this act, it is now necessary to decide the question only of the unity of the improvement authorized by the act of the General Assembly above mentioned.

The title of this act is as follows: "An act to lay off and establish a part of Miller County into a public highway and bridge district for the construction of public highways from the city of Texarkana to the various localities in the territory hereinafter described, and for the construction of a public bridge in connection with such highways over and across the Red River between Fulton and Index, and to organize and incorporate a highway and bridge district, and to provide for levying assessments and collecting the same, and for other purposes."

The provisions of the act, which are material upon the consideration of this question, are as follows:

Section 1 of the act defines the boundaries of the district and provides that the territory therein included "be and the same is hereby created and constituted a highway and bridge district and said district shall be known as the 'Miller County Highway and Bridge District.'"

Section 2 of the act provides that the said district shall have the power to construct and maintain sixty miles of free public highways leading from the city of Texarkana to such point on the Red River between Fulton and Index, at which it may deem desirable and suitable to construct a bridge over and across said Red River in connection with the plan and system of such highways, and at such point so selected on Red River, said district shall have power to construct and maintain a free public bridge in connection with said highways over and across

said Red River, and shall have the power to construct and maintain other highways in connection with the highway leading to said bridge from the city of Texarkana to such points as the commissioners deem desirable but not to exceed in the aggregate in connection with the highway to said bridge sixty miles in length. And this section provides that the commission shall have the power to grant a right-of-way over said bridge to any public utility upon any terms which shall not interfere with the public use of said bridge.

Section 3 provides that three men there named "are hereby appointed the commission of said Miller County Highway and Bridge District," and provides for the appointment of their successors.

Section 5 provides that "the said board of commissioners shall have the power, and it is hereby made their duty, to build and construct a public highway from the city of Texarkana over and across the territory in said district to such point on Red River as they may select for the purpose of building the bridge over and across Red River in connection with said highway and system of highways, between Fulton and Index, as aforesaid. * * * And said board shall also have power, and it is hereby made their duty, to build and construct a bridge over and across said Red River at such point, suitable in all respects for footmen, vehicles, railroads and other public utilities, *if in the opinion of said commission it may be deemed necessary under this act.* Said highways and bridge to be built where, in the discretion of said board of commissioners, it is most practicable and best to commence, locate and end; and they shall have power to protect and maintain such highways and bridge in such effective condition as honest, able and energetic efforts on their part may obtain, by building, rebuilding and repairing, or such other work as the board may deem necessary." This section further provides that the commissioners shall have power to determine the crown, height, slope and grade of said highways, as well as the dimensions and character, in every respect, of said

bridge, and make all needful regulations, and do all things in their opinion necessary to secure and promote the public convenience and safety over said highways and bridge; and further provides that "said commissioners shall have the right of eminent domain for the purpose of condemning any land, levees and buildings, or other property, public or private, for the purpose of the right-of-way of said highway and bridge, wherever located as aforesaid."

Section 6 directs the commission to form plans for the construction of such highways and bridge, and to procure estimates of the cost thereof.

Other sections provide the manner in which the commissioners may obtain by condemnation or otherwise the right-of-way for said highways and the approaches and abutments to said bridge, and define the words "right-of-way" as used in the act to mean and include all grounds necessary for the construction of highways and bridge, its approaches and abutments and its piers, and all other necessary lands for the purpose of carrying out the construction of said highways and bridge.

Section 36 of the act confers authority upon the county court of Miller County to take over and acquire the highway and bridge upon such terms as may be agreed upon as to its future maintenance but that in the event the highway and bridge is not taken over by said county court as a public highway of said county that the commissioners shall levy annually such assessments upon the benefits as may be necessary for the maintenance of said highway and bridge for the purpose of maintaining same and its approaches, abutments and piers in good repair and conditioned so as to keep it forever open to the public.

The parties differ as to the powers of the commissioners and the decision of that question largely turns upon the construction of section 5. It is contended on behalf of the district that this section vests the discretion to construct the highways without also constructing the bridge. But we do not think that the section should be

so construed. The act should be considered as a whole, and when so considered we think the legislative intent was to provide for an improvement district for the construction of the highways and bridge. The purpose of the act is so declared in its title, and in every instance a conjunctive conjunction is used in referring to the purpose of the act and the duties of the commission. A disjunctive is not used in a single instance. While this fact is not conclusive, it is a strong circumstance to be considered in interpreting the act, and in arriving at the essence of the thing intended to be accomplished. If it be found that the improvement was intended to be a unit, then the provisions of the act are mandatory and the commissioners have no discretion to choose the parts of the improvement they will construct. *Gallup* v. *Smith,* 12 L. R. A. 353. We think it could not be successfully contended that the commission has the authority to build the bridge without also building the roads connecting with it. Yet we think there is as much authority for so doing as there is for constructing the highways and eliminating the bridge from the plans of the improvement.

It is true that section 5 of the act provides as follows: "And said board shall also have power, and it is hereby made their duty, to build and construct a bridge over and across said Red River at such point, suitable in all respects for footmen, vehicles, railroads and other public utilities, *if in the opinion of said commission it may be deemed necessary under this act.*"

In the construction of the language quoted it is proper to bear in mind that the commissioners have only such power as is conferred by the whole act, and in the discharge of the duties there imposed upon them they have only such discretion as is expressly conferred upon them, or as is necessarily implied from a consideration of the duties so imposed, and we think the phrase, "if in the opinion of said commission it may be deemed necessary under this act," was not intended to enlarge the discretionary powers of the commission, nor to authorize them to make any change in the purpose of the act; but

that the proper construction of this language is to hold that the discretion there vested relates only to the kind of bridge which they shall construct, and, whether or not it shall be made available to railroads, and other public utilities. We think this language left to the commission the duty of determining the necessity or propriety of constructing a bridge suitable for railroads and other public utilities, and conferred the authority to construct the bridge so that it would be available for railroads and other public utilities, if they deemed it advisable so to do, and the discretion conferred upon the board is limited, not to a determination of whether a bridge shall be built at all or not, but solely as to the character of the bridge to be built.

Therefore, if the board was given no discretion to adopt plans which excluded the construction of the bridge, and if, as alleged in the complaint, the construction of both the highways and bridge is impossible within the limits set by the act, it follows that the board exceeded its authority, and the prayer of the complaint should have been granted. The decree of the court below is, therefore, reversed and the cause will be remanded with directions to overrule the demurrer to the paragraph of the complaint which alleges the Act of the General Assembly contemplated that the highways and bridge constituted a single improvement and that the commission had no discretion to construct a portion only of the same.